IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA
Plaintiff

vs

1) GILBERTO RODRIGUEZ
2) ANGEL MENDEZ
3) SUGEYL RODRIGUEZ
4) BARBARA RAMOS
5) YAMILET FAJARDO
6) MARYLIN PINEDA
7) MILDRED BAEZ
8) PEDRO PEREZ
9) CARMEN SEIN
10) RICHARD PIETRI
11) EUSEBIO MERCEDES
**12) GERALDO CASTRO**
**13) GILBERTO MODESTO**
14) ONNIS ACOSTA
15) MARILIZ SUAREZ
16) FRANCISCO FONTANEZ
17) SAMUEL ESCOBAR
18) MARTIN PERNAS
19) ANIBAL ROSSELLO
20) SONYA CASTELLANOS
21) MAXIMILIEN ESPINAL
22) MIGUEL DE AZA
23) HARRY REYES
24) LOUIS CRUZ
25) JULIO MARIN
26) GLORIA CASTRO
**27) CESAR BERROA**
28) RAYSA PACHECO
**29) JULIO CASTRO**
30) ELBA TORRES
**31) GLENDA DAVILA**
32) RAYMOND RODRIGUEZ
33) JOEL CASTILLO
34) YOLANDA RODRIGUEZ
Defendants

CRIMINAL 08-0242CCC

**O R D E R**

During the trial session of March 21, 2011 an issue arose related to the admissibility of Board of Medical Examiners' envelopes addressed to SIMED purportedly containing certifications of good standing of defendant (27) César Berroa, (12) Geraldo Castro and (29)

Julio Castro as well as a certification of good standing for defendant (31) Glenda Dávila and for defendant (13) Gilberto Modesto-Lebrón, without envelopes. The government represented to the Court that SIMED had not copied these envelopes upon making its disclosure of records to the United States and that it was not until two days before that it had learned of their existence. Additionally, Assistant U.S. Attorney Ruiz-Santiago stated that the government would establish through the SIMED witnesses that the foldings on the original certifications of good standing of defendants Glenda Dávila and Gilberto Modesto-Lebrón (IDs 89 and 91) were proof that these documents had been mailed by the Board of Medical Examiners of P.R. to SIMED, the entity that received them, notwithstanding the absence of the envelopes themselves. Given the Court's concerns regarding the existence of the fold marks themselves and whether or not these could be linked to a document delivered by mail, it decided to hold the authentication testimony of the SIMED custodian outside the presence of the jury.

      Trial was not held on March 23, 2011 in order to allow the defendants and their counsel to investigate any matter related to the evidentiary materials mentioned above. SIMED, the insurance company whose records are the subject matter of the investigation, had been closed due to a local holiday on March 22, 2011. During today's hearing, March 24, 2011, the Court heard the testimony of Luz Belinda Gómez-Pizarro who has worked at SIMED since August 1998 at its filing room department. She explained how documents received at the file room are processed to keep a virtual record and how a physical record is made which is sent to the central dead file for storage. She explained the search that she conducted regarding IDs 89, 90, 91, 93 and 94 consisting of the original certifications of good standing issued by the Board of Medical Examiners of P.R. on May 14, 2007 and May 23, 2006 for Glenda Dávila and Gilberto Modesto-Lebrón, respectively (IDs 89 and 90); original Board certification of good standing issued to César A. Berroa-Báez on August 23, 2005 with an envelope stamped as received on August 31, 2005 by SIMED on both the envelope and the original certification (ID 91); original Board certification of good standing issued on August 24, 2005 to Gerardo Castro-Betances with stapled envelope, stamped as received by SIMED on August 29, 2005 both on the envelope attached and on the certification (ID 93) and the original Board certification of good standing to Julio Castro-Cruz

on September 9, 2005 with stapled envelope that has a received SIMED stamp of September 22, 2005 that also appears on the original certification (ID 94).

Having considered the direct and the cross-examinations of the SIMED witness for over three hours regarding the process of filing, scanning and safekeeping of records received by SIMED at its file room, specifically those offered by the government as IDs 89, 90, 91, 93 and 94, the Court concludes that they have been fully authenticated by the witness as certifications of good standing issued on the dates indicated above to defendants Dávila, Modesto-Lebrón, Berroa, Castro-Betances and Castro-Cruz including the envelopes corresponding to IDs 91, 93 and 94.  ID 91, which is composed of the original certification of César A. Berroa-Báez and a Manila envelope measured in court to be 12 inches by 9 inches, was a subject of controversy since defendants claimed that at the time that it was presented to the SIMED witness Gómez-Pizarro the envelope and the certification were not stapled.  The witness testified that she found both the certification and the envelope, ID 91, stapled together.  The Manila envelope has a staple firmly attached to it which is exactly of the same length as the tear that appears on the certification itself; when the holes punched in the certification and the Manila envelope are lined up, the cut in the certification falls exactly over the staple on the envelope.  Additionally, both the certification and the Manila envelope addressed to SIMED bear the same SIMED receipt stamp dated August 31, 2005.  These physical characteristics lead to the reasonable inference that the certification and the Manila envelope marked as ID 91 were stapled together **at SIMED**.  The fact that at the time of presenting it to the witness during her authentication testimony this morning they were not stapled together does not defeat the reasonableness of that inference.  The six (6) original SIMED files which were brought to Court by a SIMED record custodian on March 21, 2011 and kept under the custody of the Court since then were provided to the defendants and their attorneys for examination in open court that same day.  A plausible explanation is that they came apart at some time during the handling of ID 91 in court by the defendants and their attorneys.  The Court rules that ID 91 is a unit for purposes of this Fed.R.Evid.104 preliminary ruling.

Accordingly, the five IDs are admitted as exhibits 45 through 49.  The matter of the fold marks on IDs 89 and 90, now Exhibits 45 and 46, as indicative that these particular

certifications of good standing of defendants Dávila and Modesto-Lebrón, respectively, were received by mail at SIMED is a matter that defendants are free to pursue pursuant to Fed.R.Evid. 104(e) just as they may introduce before the jury evidence relevant to weight or credibility regarding the five exhibits found admissible by the Court in this Order.

SO ORDERED.

At San Juan, Puerto Rico, on March 24, 2011.

S/CARMEN CONSUELO CEREZO
United States District Judge