IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br>vs<br>1) GILBERTO RODRIGUEZ<br>2) ANGEL MENDEZ<br>3) SUGEYL RODRIGUEZ<br>4) BARBARA RAMOS<br>5) YAMILET FAJARDO<br>6) MARYLIN PINEDA<br>7) MILDRED BAEZ<br>8) PEDRO PEREZ<br>9) CARMEN SEIN<br>10) RICHARD PIETRI<br>11) EUSEBIO MERCEDES<br>**12) GERALDO CASTRO**<br>**13) GILBERTO MODESTO**<br>14) ONNIS ACOSTA<br>15) MARILIZ SUAREZ<br>16) FRANCISCO FONTANEZ<br>17) SAMUEL ESCOBAR<br>18) MARTIN PERNAS<br>19) ANIBAL ROSSELLO<br>20) SONYA CASTELLANOS<br>21) MAXIMILIEN ESPINAL<br>22) MIGUEL DE AZA<br>23) HARRY REYES<br>24) LOUIS CRUZ<br>25) JULIO MARIN<br>26) GLORIA CASTRO<br>**27) CESAR BERROA**<br>**28) RAYSA PACHECO**<br>**29) JULIO CASTRO**<br>30) ELBA TORRES<br>**31) GLENDA DAVILA**<br>32) RAYMOND RODRIGUEZ<br>33) JOEL CASTILLO<br>34) YOLANDA RODRIGUEZ<br>Defendants | CRIMINAL 08-0242CCC |

### RULING ON PROSECUTOR'S COMMENTS IN REBUTTAL ARGUMENT ON MAY 13, 2011

Upon conclusion of the government's rebuttal argument, Enrique Vélez, attorney for defendant Glenda Dávila and Esther Castro, attorney for defendant César Berroa, raised objections to a remark made by A.U.S.A. José Ruiz-Santiago with reference to Daniel Solís, whom government witnesses have referred to as a broker or intermediary for Yolanda Rodríguez but who did not testify at trial. The comment specifically objected to is that part of the following excerpt which is in bold print. The sentences immediately preceding and following the challenged portion are included and set forth herein: "You heard counsel for Julio Castro, the missing link, Solís. **Well, the evidence in this case as to Solís, in all the evidence in this case as to Solís, there is not a single piece of evidence or information that Solís has a Plea and Cooperation Agreement with the United States, that he has an obligation to testify on behalf of the United States.**" Transcript of May 13, 2011 government's rebuttal argument.

It is attorney Vélez' position that this statement was unsupported at the time that A.U.S.A. Ruiz made it in rebuttal argument since the Plea and Cooperation Agreement with Mr. Danny Solís was in effect and a review of documents shows that the prosecutor at no time reneged on it. On her part, Ms. Castro's objected that, regardless whether a plea and cooperation agreement existed or not, it was improper to bring this matter before the jury in order to bolster the testimonies of those witnesses who were cooperating witnesses.[1] Both these objections were joined by the remaining defendants. The government avers that this was not an improper but an invited response in light of the statements made by various defense attorneys in their closing arguments questioning "where was Solís?" and that the government's actions after the Plea and Cooperation Agreement of September 10, 2007 clearly indicated to the Court before and during the sentencing hearing that Mr. Solís had failed to provide truthful cooperation to the government.

---

[1] In the context of the rebuttal argument, proposing to the jury the reason for not producing Solís as a witness was that the government has no plea and cooperation agreement to compel him to testify does not serve to buster the credibility of those witnesses who testified pursuant to a cooperation agreement .

The Court defined the scope of its inquiry regarding the appropriateness of the prosecutor's comments regarding Mr. Daniel Solís which have been quoted above. It is irrelevant that the Plea and Cooperation Agreement between Solís and the United States contained a clause regarding the procedure for a determination by the Court regarding whether any party breached any provision of the Plea and Cooperation Agreement if contested. What is important in ruling upon the objections to the rebuttal argument comments is whether, when this trial commenced on February 9, 2011, Mr. Daniel Solís had an obligation to testify as a cooperating defendant for the government in this case. To that end, the Court has reviewed not only the Plea and Cooperation Agreement but also the United States' Sentencing Memorandum (docket entry 60) filed on October 13, 2010 in Cr. No. 10-0190(JAF) and the transcript of the sentencing hearing before Judge José A. Fusté held on January 26, 2011 in <u>United States v. Daniel Solís</u>, Cr. No. 07-0302(JAG) and 10-0190(JAF). Cr. No. 07-0302(JAG) was consolidated for sentencing purposes with Cr. 10-0190(JAF), where Mr. Daniel Solís was also a defendant. The defendants contend that, although Judge Fusté sentenced him to 70 months on the health care fraud counts plus an additional consecutive 24 months on the aggravated identity thefts count in Cr. No. 10-0190, he was nonetheless sentenced in Cr. No. 07-0302 to 37 months of imprisonment to be served concurrently to the sentence imposed in Cr. No. 10-0190. Since the sentencing guideline range applicable in 07-0302(JAG) was 37 to 46 months and Mr. Solís was sentenced, as recommended, to the lower end, that is taken to signify that the Plea and Cooperation Agreement was and still is in effect. The government counters stating that this refers only to the guideline calculations, not to Solís' cooperation which, had it been truthful and complete, would have moved the government to file a motion for downward departure under U.S.S.G. §5K1.1.

We have reviewed the government's Sentencing Memorandum in the case of Daniel Solís as well as the full transcript of his sentencing hearing in both criminal cases, Nos. 07-0302 and 10-0190, to determine what transpired after the cooperation agreement which would shed light on whether Solís was bound by his agreement with the government to testify on its behalf at this trial.

Mr. Solís came up for sentencing before Judge Fusté on two cases because after he

was charged in the year 2007 in Cr. No. 07-0302 with related counts, and after having reached a Plea and Cooperation Agreement in that case, he was again indicted in a separate case, Cr. No. 10-0190, on counts of health care fraud which had as an underlying premise his practice of medicine with a fraudulently obtained medical license causing substantial economic losses to health care benefit programs.  At the consolidated sentencing hearings, his attorney asked for "two-years total for both cases." See page 7 of transcript of sentencing hearing.  The government, however, zeroed in on defendant's lack of cooperation. The following statements demonstrate that the United States understood Solís' cooperation had been dismal:

> MR. RUIZ: Then we noticed some problems.  At the beginning of the first interview, he said he didn't charge anything for that. And the second interview we knew from other cooperators that he was charging. So he admitted, and it was like pulling teeth these five interviews. And that is–I'm not going to go into detail in our objection to the Presentence Report, because we filed an objection where the Presentence Report found there was substantial assistance.  We objected to that because we found out that even though he gave us information about people who he helped who paid him, he kept information–he kept information about other people he was protecting, which time and again we would uncover through other sources, one, two years later.

Transcript of January 26, 2011 Sentencing Hearing (TR.), p. 32, lines 13-25.

> And we've been talking about the guidelines here, but I can make a valid argument for obstruction of justice because of the repeated nature of this concealment, and the resources we had to expend to uncover what we believe is the full extent of his actions. But we gave him a chance to cooperate. He came.  We discovered through other means that his sister had fraudulently passed the test, and his sister happened to have the same bogus identical false scores as he had.

TR., p. 33, lines 1-8.

> Now, I asked him, is this everything that your sister did, this referring one person to you? He said, yes. And I would end each debriefing asking him, is there anybody else that you helped that you didn't tell us about? He would say no. So we discovered the sister in 2008, October 2008, around that time. Then we brought him to our office, and I said, look, look what I found out. Your sister has the same bogus score. And he says, yes, I helped my sister. And then – eventually in the fifth interview he said yes. We're going to indict your sister. You have to cooperate with the Grand Jury. And he said, well, I didn't get my result fraudulently. It wasn't through Yolanda Rodríguez, like he told us before. I didn't help my sister. So I said, okay. This is it.
> And then by that time it wasn't his sister alone.  It was other people he was protecting. So that is his cooperation.

TR., p. 34, lines 2-18.

> MR. RUIZ: No, So that you have. You have him giving half-baked stories to the government while he is on bond.

TR., p. 39, lines 5-7.

> And then this defendant is one of the most culpable individuals. This is the broker who brought the most people to them. He was supposed to be the most forthcoming cooperator in this investigation, and we gave him chances. We gave him chances.
> The inconsistencies that I put in my motion are all in the five Memorandums of Interview which were given to the defense a long time ago. That's why they don't even refute that.

TR., p. 39, line 24 to p. 40, line 7.

> MR. RUIZ: And what does he do? He tries to, you know, play the Government for a fool. He tries to play the court system for a fool by practicing medicine. This is a person who has no respect for the law, Your Honor.

TR., p. 40, lines 9-13.

In its Sentencing Memorandum, the United States also brought to the Court's attention what it called evidence of aggravating circumstances of income tax evasion and of unlawful practice of medicine while on bond. At pages 17 through 19 of that Memorandum, the government presented details regarding these two aggravated circumstances. Specifically, that defendant under-reported in his 2006 income tax return filed on April 17, 2007 with the P.R. Treasury Department the sum of $137,593.77 which the government informed "he received from various health care benefits programs, each of which issued an informative return specifying the amounts paid to the defendant that year." The amounts under-reported totaling $137,593.77 were itemized as to each health care program. It was informed that Solís' reported income for 2006 was only 36% of his entire income that year. Finally, the government's Sentencing Memorandum,reported to the Court that Mr. Solís, "from December 2009 to January 2010 . . . was practicing medicine with a suspended medical license while he was on bond in **Cr. No. 07-0302(JAG)**, in reckless disregard of the orders of the Court." (Emphasis ours.) Reference is made to the Order setting conditions of release in **Crim. No. 07-302(JAG)** on August 2, 2007 that on July 31, 2008 his medical license was suspended by the Board of Medical Examiners and it was expressly stated that he was not allowed to practice medicine. This notwithstanding, on December 14, 2009, Solís signed a contract for professional services as medical coordinator for the H1N1 vaccine which required him to be a duly certified physician with a current medical license. The government stated that defendant Solís worked as a medical coordinator during a vaccination campaign of the Municipality of San Juan for which it hired the company where Solís worked to administer the vaccines. The government referred to

a sworn statement of a nurse at the Municipality's vaccination campaign who declared that he and the defendant administered vaccines. Also, the government proffered that it possessed consent forms of persons who were administered such vaccines by Solís and that the forms were signed by him as the administering physician with his medical license number 14727. The government informed the Court that Solís was paid from December 2009 to January 2010 the sum of 14,188.35 for his medical services in various vaccination drives in Puerto Rico and that under Puerto Rico law it is a felony to practice medicine without a license.

The fact that the government re-indicted Daniel Solís after entering into a Plea and Cooperation Agreement in Cr. No. 07-0302, the information it provided in its Sentencing Memorandum, the prosecutor's affirmations at the sentencing hearing of both Cr. No. 07-0302 and 10-190 regarding his lack of cooperation, his protection of persons and concealment of information during the investigation and while Cr. No. 07-0302 was pending, its refusal to file a downward departure for substantial assistance in Cr. No. 07-0302, and its denouncing the danger of a cooperator who gave a half-baked cooperation getting a variance when the government had refused to seek downward departure, as well as the aggravating circumstances related to tax evasion and the unlawful practice of medicine while on bond in Cr. No. 07-0302 to defeat a possible variance, all point to one conclusion: the government understood and treated defendant Daniel Solís as a defendant who failed to provide the truthful and complete information which he had agreed to as part of his responsibilities under the cooperation agreement. The government informed the Court, point-blank, that Solís placed himself at the brink of obstruction of justice in his failings as a cooperator and used that against Solís at his sentencing hearings. Whatever possibilities of benefits to be derived by the government from the cooperation agreement with Solís or viceversa came to a grinding halt at least by May 26, 2010, the date that he was re-indicted in Cr. No. 10-0190. Certainly, it can hardly be argued that by October 13, 2010, when the government filed its Sentencing Memorandum where it reported a violation of Solís' conditions of release in Cr. No. 07-0302, or after his sentencing hearing of January 26, 2011 where the government labeled him an obstructionist, there was any trace that either Solís

would cooperate in the trial of this case as of February 9, 2011 or that the government could consider him a cooperating defendant for any purpose.

We, therefore, conclude that when A.U.S.A. Ruiz in his rebuttal argument, responding to prior remarks in the defense counsels' closing arguments related to Solís' absence as a government's trial witness, made reference that in this case there is not a single piece of evidence or information that Solís **has** a plea and cooperation agreement with the United States, that he has an obligation to testify on behalf of the United States, the comment was supported by real circumstances and was neither improper nor untrue.

For the reasons stated, the objections raised by defendants to such comments are OVERRULED.

SO ORDERED.

At San Juan, Puerto Rico, on May 16, 2011.

                                                S/CARMEN CONSUELO CEREZO
                                                United States District Judge